**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>      v.<br><br>SACRAMENTO VEGA-GIL,<br><br>                         Defendant. | CR-08-0337-S-EJL<br><br>**MEMORANDUM ORDER** |

Pending before the Court in the above entitled matter is a Motion to Dismiss filed by the Defendant. The parties have submitted their responsive briefing and the matters are now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2).

**Factual and Procedural Background**

The Defendant Sacramento Vega-Gil is charged with Illegal Re-Entry in violation of 8 U.S.C. § 1326(a) and (b)(1). The Indictment, filed on December 9, 2008, charges that:

> On or about October 12, 2008, in the District of Idaho, the defendant, Sacramento Vega-Gil, an alien, was found in the United States, to wit: Twin Falls County, Idaho, after having been previously removed from the United States to Mexico on or about March 3, 2006, at or near El Paso, Texas, the said defendant having not obtained the consent of the Secretary of the Department of Homeland Security for reapplication for admission into the United States, in violation of Title 8, United States Code, Sections 1326(a) and (b)(1).

(Dkt. No. 1). On March 26, 2009, the Government filed a Notice of Sentencing Enhancement stating that:

> [O]n or about May 2, 2005, in the District Court of the Fifth Judicial District of the State of Idaho, in and for the County of Minidoka, the defendant was convicted of possession of a controlled substance, to-wit: methamphetamine, a felony offense. Because of this conviction, if the defendant is convicted for a violation of 8 U.S.C. § 1326(a), the defendant's sentence will be enhanced and the defendant will be subject to a sentence of imprisonment for not more than twenty (20) years and/or a $250,000 fine.

(Dkt. No. 16). On May 11, 2009, the Defendant filed the instant Motion to Dismiss the charges on the grounds that his due process rights were violated because the notice of his initial deportation hearing was deficient, which prejudiced him because at the hearing he would have had the option to agree to a voluntary departure. The Defendant also contends that his prior conviction was not an aggravated felony. (Dkt. No. 19). The Government has responded to the motion arguing the Defendant is collaterally estopped from attacking his underlying deportation by way of his 2006 guilty plea to a charge of illegal reentry and, alternatively, that he received adequate notice of the underlying deportation hearing and was not prejudiced by any deficient notice because his prior aggravated felony conviction made him ineligible for voluntary departure. (Dkt. No. 22). The Government has also filed a correction noting that it does not appear the Defendant was convicted of misdemeanor possession of a controlled substance as it had argued in its response to the motion. (Dkt. No. 26).

**Discussion**

I.  Factual Background

The Defendant arrived in the United States in 1980 at the age of six years old. (VG 0078).[1]  His immigration status was later adjusted to that of a lawful permanent resident on July 11, 1989. (VG 0078). On May 2, 2005, the Defendant was convicted of simple possession of methamphetamine in Mindoka County, Idaho. (VG 00138). On May 4, 2005, the Defendant was given a Notice to Appear informing him that he would need to appear before an immigration judge at a date and time to be set to show why he should not be removed from the United States because of the May 2, 2005 conviction. (VG 0076). On May 5, 2005, the Defendant was released from INS custody on a $10,000 bond at which time the Defendant gave the immigration officials his sister's address as his place of residence. (VG 0075). On May 6, 2005, the Defendant's sister signed the bond and paid a $1,500.00 premium. (VG 0073). On May 20, 2005, a notice of hearing was sent to the address left for the Defendant's sister setting the date of the Immigration Court hearing for June 23, 2005. (VG 0066). The notice stated that failure to appear could result in an order of removal being issued and that the Defendant was responsible for informing the court of any change in address. (VG 0066). It is this notice that the Defendant is challenging on this motion arguing he never received the notice. As a result, the Defendant did not appear at the June 23, 2005 hearing and the Immigration Court entered an order of removal in his absence based upon the record. (VG 0048, 0049 , 0070, 00128).

---

[1] The Court will use "VG" to cite to the immigration record in this Order followed by the stamped number in the lower right corner of the page. The parties each filed portions of the immigration record as attachments in (Dkt. Nos. 19, 22).

On January 23, 2006, immigration officials issued a notice to the bond agency to deliver the Defendant to immigration officials on February 23, 2006. (VG 00123). Bond agents arrived at the residence of the Defendant's sister and notified her of the February 23, 2006 hearing. The Defendant reported to the immigration office on February 23, 2006. Based upon the order of removal, the Defendant was then deported on March 3, 2006. The Defendant was found approximately thirty-five days later, on July 5, 2006, in the United States without the requisite permission from the Attorney General. (Dkt. No. 22, Plea Agreement, p. 8). As a result, the Defendant was indicted in the District of Arizona for violation of 8 U.S.C. § 1326, reentry of removed alien. On December 22, 2006, the Defendant plead guilty to the charge and was sentenced to time served and again deported on February 15, 2007. (Dkt. No. 22, Plea Agreement). The Defendant returned to the United States on October 1, 2007 which is the conduct giving rise to the Indictment brought in this case alleging illegal reentry in violation of 8 U.S.C. § 1326. (Dkt. No. 1). The charge is based on the Defendant's initial deportation order and subsequent reentry on October 1, 2007.

II.   Whether the Defendant May Collaterally Attack The Underlying Deportation Order

The instant motion to dismiss challenges the validity of the initial deportation order, arguing the Defendant was denied his opportunity for a voluntary departure as a result of the deficient notice of the June 23, 2005 hearing. The Government contends the Defendant's 2006 guilty plea precludes him from collaterally attacking the underlying deportation in this motion. By entering his 2006 plea of guilty to a violation of § 1326, the Government argues, the Defendant admitted to the validity of the underlying deportation order thereby waiving

any alleged defects in the underlying deportation hearing. (Dkt. No. 22, p. 3). The Defendant counters that he can properly challenge the underlying deportation order and that it would be "inappropriate" to apply collateral estoppel to this case as its effect would be unfair and cause an injustice in light of the facts of this case. (Dkt. No. 27). The Defendant argues that his 2006 guilty plea was not an admission of the "correctness of the characterization of the underlying offense that gave rise to the deportation" but merely an admission of the elements of the charge of illegal reentry. (Dkt. No. 27).

The Court finds the Defendant may contest the validity of the underlying deportation making up the basis for the § 1326 charge. "Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004); see also United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004) (citing United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987) (finding a prior deportation order cannot serve as a predicate for a subsequent prosecution under 8 U.S.C. § 1326 when the deportation proceedings giving rise to the order were fundamentally flawed)). Further, the Court finds the Defendant did not waive his right to challenge the deportation order because he was never advised of the possibility of a voluntary departure. See Ubaldo-Figueroa, 364 F.3d at 1048 (concluding that waiver must be "considered and intelligent"). As such, the Court will consider the Defendant's challenge to the underlying deportation order.

III.  Challenge To The Deportation Order

Where, as here, the defendant is collaterally attacking the validity of a prior deportation order on grounds that the deportation proceedings were fundamentally flawed, the defendant must show that: (1) he exhausted all administrative remedies that were available to seek relief against the order, (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair.  See Pallares-Galan, 359 F.3d at 1095 (citing 8 U.S.C. § 1326(d)); Ubaldo-Figueroa, 364 F.3d at 1048.  Here, the Defendant's challenge to the validity of the underlying order of deportation argues that his due process rights were violated because he did not receive notice of the June 23, 2005 hearing and, thus, was not informed of his eligibility for a fast-track voluntary departure in lieu of removal.  (Dkt. No. 19, p. 4).  The Government counters that the Defendant has failed to overcome the presumption that he received sufficient notice of the removal proceedings and, therefore, no due process violation occurred.  (Dkt. No. 22, p. 7).  In reply, the defense has provided additional information regarding the notice's deficiencies.

   A.   Exhaust Administrative Remedies and Opportunity for Judicial Review

The Court finds the exhaustion requirement does not bar collateral review where, as here, the Defendant was not informed that he was eligible for relief from removal.  See United States v. Ortiz-Lopez, 385 F.3d 1202, 1203-04 (9th Cir. 2004).  Likewise, the Defendant was denied meaningful judicial review and denied his due process rights in the underlying deportation proceedings because he was not informed that he was eligible for the fast-track voluntary departure in lieu of removal.  See Id.; Ubaldo-Figueroa, 364 F.3d at 1049-50.  Thus,

the issue here turns on whether the deportation order was fundamentally unfair in light of the alleged notice deficiencies and whether the Defendant could have agreed to voluntary departure had he been advised of the option.

    B.    <u>Fundamentally Unfair</u>

As to the "fundamental unfairness" showing, the defendant must demonstrate that: (1) his due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. <u>Ubaldo-Figueroa</u>, 364 F.3d at 1048; <u>United States v. Garcia-Martinez</u>, 228 F.3d 956, 960 (9th Cir. 2000). To show prejudice, the Defendant "must only show that he had a plausible ground for relief from deportation." <u>Ubaldo-Figueroa</u>, 364 F.3d at 1050 (internal quotation marks omitted). The Defendant argues the deficient notice violated his due process rights and he suffered prejudice as a result because the deficient notice precluded him from attending the deportation hearing where he would have been advised of the voluntary departure option and, had he exercised it, would not have a prior deportation on his record which makes up the § 1326 charge in this case. (Dkt. No. 19, p. 7). The Government counters that the notice was not deficient and the Defendant did not suffer any prejudice because his prior conviction makes him ineligible for voluntary departure. The Court finds the Defendant here has shown a violation of his due process rights and prejudice such that he has made a plausible claim for relief from deportation; voluntary departure under 8 U.S.C. § 1229c(a).

        1.    <u>Due Process Violation By Notice Deficiency</u>

"A notice to appear in removal proceedings 'shall be given in person to the alien,' unless 'personal service is not practicable,' in which case notice may be accomplished 'by mail.'"

Sembiring v. Gonzales, 499 F.3d 981, 985 (9th Cir. 2007) (citing 8 U.S.C. § 1229(a)(1)). "If an alien does not appear at a removal proceeding, § 1229a(b)(5)(A) directs the [Immigration Judge] to enter a removal order in absentia 'if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was ... provided' in accordance with § 1229(a)(1) or (2) and that the alien is removable." Sembiring, 499 F.3d at 985-86 (citations omitted). When delivery is done by certified mail there is a strong presumption of effective service. However, the Ninth Circuit has recognized that '[a]lthough it is still proper to presume that postal officers properly discharge their duties," the "strong presumption" applied when service was by certified mail does not apply to service by regular mail, and that the "fairly strong evidence" that had been necessary to rebut the "strong presumption" is not required. Salta v. INS, 314 F.3d 1076, 1078-79 (9th Cir. 2002) (citation omitted).

The notice here indicates it was delivered by regular mail. The parties dispute the amount of evidence required to overcome the presumption of delivery, but both agree that since the notice requirement was relaxed to allow for delivery by regular rather than certified mail, the Ninth Circuit has required less evidence to overcome the presumption of effective service for notices served by regular mail. Sembiring, 499 F.3d at 986-887 (discussing Salta, 314 F.3d at 1078-79). In this case, the Court applies the lesser presumption of effective service applicable to regular mail and holds the Defendant has presented sufficient evidence to overcome the presumption of effective service so as to demonstrate that he did not receive notice of the deportation hearing. See 8 U.S.C. § 1229a(b)(5)(C)(ii). Moreover, the Court finds the evidence presented is credible, corroborated, and unrefuted by the Government.

The notice was addressed to the residence of the Defendant's sister, Teresa Navarrete, with whom the Defendant was residing at the time the notice for the June 2005 deportation was issued. (VG 0066). The physical address the Defendant gave to INS for Ms. Navarrete's home was 275 Main Street, Eden, Idaho, 83325. Ms. Navarrete has supplied an declaration stating that mail in the small town of Eden, Idaho was generally delivered to residences' P.O. Box addresses regardless of which address, physical or P.O. Box, was on a letter because of the small size of the town. (Dkt. No. 27, Ex. A). Ms. Navarrete further states that the only letter the Defendant received regarding his deportation proceedings was from the bond company in February of 2006, after the June 2005 hearing, and that the Defendant never knew about the June 2005 deportation hearing. (Dkt. No. 27, Ex. A). Ms. Navarrete's recitation of the mail delivery practice in Eden, Idaho is supported by a separate declaration of Mariella Diaz, paralegal at Andrade Law Office, Inc. (Dkt. No. 27, Ex. C).

Ms. Diaz's declaration relays her telephone interview with a United States Postal Service employee, Kevin Black, who has worked at the Eden Post Office for over five years. Mr. Black described the flexible manner in which mail was delivered in Eden, Idaho which is consistent with Ms. Navarrete description. (Dkt. No. 27, Exs. A, C). Mr. Black stated that in the past, presumably during the time frame in question here, mail was often delivered to residence's P.O. Boxes even if addressed to one's physical address to avoid having to return the letter to the sender so that people would not miss their mail. (Dkt. No. 27, Ex. C). Mr. Black notes that about a year and a half ago the Post Office became less flexible and would return a letter to the sender if it did not have the P.O. Box but only the residence's physical address.

Based on these declarations, the Court finds the Defendant has overcome the presumption that the notice of the June 2005 deportation hearing was received by the Defendant. These declarations consistently describe the mail delivery in the area where the Defendant was residing with his sister was such that letters were typically placed in residence's P.O. Box addresses to avoid people missing their mail. In making this finding, the Court is compelled to acknowledge that it questions whether a letter addressed to the Defendant's name with his sister's street would have been treated similarly since he resided with his sister in Eden, Idaho for only three weeks. The declarations regarding the Eden, Idaho mail delivery are premised on the fact that the postal workers knew everyone in the small town. Thus, it is possible given the short time the Defendant appears to have resided with his sister that the postal employees did not know the Defendant and/or his name. That being said, the Court still finds the Defendant has overcome the presumption of delivery based on the fact that the Eden post office practices were designed to ensure delivery and because Ms. Navarrete states in her declaration that the notice of the June 2005 court hearing was never delivered. (Dkt. No. 27, Ex. A). Further, the Government has not provided rebuttal evidence that the notice was received or returned undelivered to the immigration officials.

The Defendant also argues he had no motive to not appear at the deportation hearing where he could have availed himself of the voluntary departure option. (Dkt. No. 19, p. 6). This is evidenced, he argues, by the fact that upon receiving the notice he turned himself in immediately. The Government disputes this, arguing the Defendant had a motive to avoid the hearing given he had committed a felony, deportation proceedings against him had begun, and

he knew a hearing was forthcoming. (Dkt. No. 22, p. 9). Further, the Government challenges the Defendant's intentions in turning himself in to immigration authorities when he did, arguing he had been released on a $10,000 bond for which his sister had paid a $1,500.00 premium and that the bond agents had appeared at his residence on the day he turned himself in, February 23, 2006. (Dkt. No. 22, pp. 9-10). As such, the Government argues the Defendant's motivation for reporting to the officials was motivated by the bond agents and the financial implications for his sister. Prior to these events, the Government points out, the Defendant did not contact the immigration officials for the nine and a half months between his release on bond and his reporting on February 23, 2006. (Dkt. No. 22, p. 10).

The Court acknowledges the existence of the bond, the bond agents, and the financial implications to the Defendant's sister are all reasonable arguments by the Government for the Defendant's motivation in reporting on February 23, 2006. However, the facts provided by the Defendant regarding the notice of the hearing demonstrate that the more likely scenario is that the Defendant did not do anything between being informed of a forthcoming deportation hearing and February 23, 2006 because he did not know until February 23, 2006 that he had missed the hearing. The notice the Defendant was given following his conviction informed him that a hearing would be set in the future. (VG 0076). Defendant's brother, Juan Vega, has stated in his declaration that the Defendant was expecting immigration papers but they never arrived and that the Defendant wanted to attend the hearing. (Dkt. No. 27, Ex. B). This declaration supports the Defendant's argument that he did not know about the hearing. While the Court acknowledges this declaration comes from the Defendant's brother, it is a sworn declaration that the Court considers to be truthful given it is consistent with the facts and

evidence in the record. Further, the existence of the bond does not seem to support the Government's argument. Any motivation the Defendant had arising from the bond would have existed prior to when he found out about the hearing and reported to the immigration officials. Based on the foregoing, the Court finds the notice in this case was deficient and, therefore, violated the Defendant's due process rights.

      2.     <u>Prejudice</u>

The Defendant argues the due process violation prejudiced him because he was unable to exercise the voluntary departure option. The Government argues the Defendant suffered no prejudice here because his prior conviction is an aggravated felony making him ineligible for voluntary departure. Voluntary departure is precluded from only two classes of immigrants, "those involved in terrorism-related activity (not at issue here), and those ... convicted of an aggravated felony." <u>Ortiz-Lopez</u>, 385 F.3d at 1204 n. 3 (internal quotation marks omitted).

The Government's response brief argued that the Defendant's two prior convictions, one for misdemeanor possession of a controlled substance and a later 2005 state felony conviction for possession of a controlled substance, amounted to an aggravated felony making him ineligible for the voluntary departure option. (Dkt. No. 22, pp. 15-16). The Government has since then filed a correction to its initial response stating that it no longer believes the Defendant was convicted of misdemeanor possession of a controlled substance. (Dkt. No. 26). As such, the record contains only the 2005 state felony conviction for simple possession of a controlled substance. This conviction is not an aggravated felony.

An aggravated felony is defined in 8 U.S.C. § 1101(a)(43)(B) as: "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime

(as defined in section 924(c) of Title 18)." This definition provides two options for a state felony to qualify as an aggravated felony: first, if the state crime "contains a trafficking element" and second, if the crime would be punishable under the Controlled Substances Act ("CSA"). See Rendon v. Mukasey, 520 F.3d 967, 974 (9th Cir. 2008). The Government's brief does not address the first option but focused instead on whether or not the Defendant's conviction was punishable under the CSA.2 Section 924(c)(2) provides that "[f]or purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." The question here is whether or not the Defendant's state felony possession charge is punishable under the CSA.

In making this determination, the Court considers whether the state drug crime categorically qualifies by the terms of the statute and, if not, whether the conduct of the conviction itself qualifies as an aggravated felony. See Rendon, 520 F.3d at 974 (describing the categorical and modified categorical approach); Taylor v. United States, 495 U.S. 575 (1990).3 Here, the Defendant was convicted of possession of a controlled substance in violation of Idaho Code § 37-2732(c)(1) which provides:

---

² The Government's response argument raised only the second option premised on its understanding that the Defendant had two prior convictions and that because of the prior conviction, the 2005 conviction would carry a two year term of imprisonment punishable under the CSA. (Dkt. No. 22, p. 16). In light of the Government correction, only the 2005 conviction remains. (Dkt. No. 26). The 2005 conviction for possession of a controlled substance, however, does not qualify under the first option as it is not a trafficking crime. The Supreme Court has stated that "ordinarily 'trafficking' means some sort of commercial dealing." Lopez v. Gonzales, 549 U.S. 47 (2006). The 2005 conviction here does not include any sale or commercial dealing in the controlled substance.

³ The Supreme Court recently issued a decision discussing the use of the categorical approach in Taylor for generic crimes versus the "circumstance-specific" interpretation where the court considers "the specific acts in which an offender engaged." Nijhawan v. Holder, 129 S.Ct. 2294, 2295-96 (2009).

> It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter.
> (1) Any person who violates this subsection and has in his possession a controlled substance classified in schedule I which is a narcotic drug or a controlled substance classified in schedule II, is guilty of a felony and upon conviction may be imprisoned for not more than seven (7) years, or fined not more than fifteen thousand dollars ($15,000), or both.

Idaho Code § 37-2732(c)(1); (VG 00138). Because the Idaho statue includes both conduct that constitutes an aggravated felony and conduct that does not, the conviction does not satisfy the categorical approach for an aggravated felony. See Anaya-Ortiz v. Mukasey, 553 F.3d 1266, 1272 (9th Cir. 2009). The Court therefor must examine the specific circumstances of the conviction to determine whether the Defendant was convicted of a crime punishable under the CSA.

Here, the Defendant's judgment of conviction contains little in the way of information regarding the underlying facts of conviction aside from the fact that the controlled substance was methamphetamine and the conviction was a felony. (VG 00138). Methamphetamine is a controlled substance the possession of which is punishable under the CSA. See 21 U.S.C. § 844(a). The maximum penalty for simple possession of a controlled substance under the CSA, however, is one year. See 21 U.S.C. § 844(a). As such, the Defendant's prior conviction is not a felony under the CSA. See United States v. Figueroa-Ocampo, 494 F.3d 1211, 1214-16 (9th Cir. 2007) (finding "in the immigration context, a simple possession offense that is punishable as a felony under state law but a misdemeanor under federal law...is not to be considered as an 'aggravated felony' under section 1101(a)(43)(B).") (discussing Lopez-Gonzales, 549 U.S. 47 (2006)); see also Ferreira v. Ashcroft, 382 F.3d 1045, 1050 (9th

Cir. 2004) (citing United States v. Arellano-Torres, 303 F.3d 1173, 1178 (9th Cir. 2002) (explaining that "[b]ecause one year is the maximum term of imprisonment authorized for a first-time offender of § 844 ..., simple possession is not 'punishable by more than one year's imprisonment under applicable ... federal law' ") (citations omitted)).  Nor does the conviction appear to have involved any trafficking conduct.  Lopez v. Gonzales, 549 U.S. 47 (2006).  As such, the Court finds the Defendant's 2005 conviction in this case is not an aggravated felony that would have precluded him from the voluntary departure option.

Because the Defendant was not prohibited from the voluntary departure option, he has made a prima facie showing of prejudice that the Government has not rebutted.  See United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) ("Once [the defendant] makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome.").  The Defendant has demonstrated "a plausible ground for relief from deportation" and that he was prejudiced by the deficiency in the notice of the underlying deportation proceedings were he could have availed himself of the voluntary deportation option.  Ubaldo-Figueroa, 364 F.3d at 1050.  Accordingly, the Court will grant the motion to dismiss.

## ORDER

THEREFORE IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss (Dkt. No. 19) is **GRANTED**.  The Indictment in this matter is **DISMISSED**.

DATED:  **July 15, 2009**

Honorable Edward J. Lodge
U. S. District Judge